IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KOCH INDUSTRIES, INC, )<br>KOCH PIPELINE COMPANY, L.P., and )<br>FLINT HILL RESOURCES, L.P. )<br>)<br>Defendants. )<br>) | Civil Action No.  04-1134-MLB |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to Sections 107(a) and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a) and 9613(g), and 28 U.S.C. § 2201 for: (1) the recovery of response costs incurred and to be incurred by the United States for response actions taken and to be taken in connection with releases and threatened releases of hazardous substances into the environment at and from the 57th Street and North Broadway Superfund Site; and (2) a declaratory judgment as to Defendants' liability for response costs that shall be binding in any

subsequent actions to recover further response costs incurred by the United States with respect to the 57th Street and North Broadway Superfund Site.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States that arises under the laws of the United States. The Court has exclusive original jurisdiction of this action pursuant to 42 U.S.C. § 9613(b) because it concerns controversies arising under CERCLA.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c) because the threatened and actual releases of hazardous substances from the Site occurred in this district and because the events or omissions giving rise to the claims herein occurred in this district.

## DEFENDANTS

4. Koch Industries, Inc. is a Kansas corporation.

5. Koch Pipeline Company, L.P. is a Kansas limited partnership. Koch Industries, Inc. has an ownership interest in Koch Pipeline Company, L.P.

6. Flint Hill Resources, L.P. is a limited liability company registered to do business in Kansas. Flint Hill Resources, L.P. is a subsidiary of Koch Industries, Inc.

## GENERAL ALLEGATIONS

7. The 57th Street and North Broadway Superfund Site ("Site") encompasses an area of approximately two square miles in a mixed commercial and residential area at the northern edge of Wichita, Kansas. It includes land within the cities of Wichita and Park City, Kansas as

well as land within an unincorporated portion of Sedgewick County, Kansas.  The boundaries of the Site generally extend along a diagonal line running from the intersection of 57th and North Broadway Avenue to the intersection of 46th and Armstrong Drive.  *See* Appendix A (depicting in yellow the general boundaries of the Site).

8. The groundwater at the Site has been contaminated with at least four volatile organic compounds: 1,1-dichloroethene (also known as 1,1-dichloroethylene), trichloroethene, tetrachloroethene, and vinyl chloride.  Some soil at the Site has also been contaminated, in two areas generally limited to the location of the former Wilko Paint, Inc. facility, and the Midland Refining Company's facility.

**KDHE and EPA Response Actions at the Site**

9. In 1987, after investigating complaints about the quality of drinking water in the vicinity of Wichita Heights that had surfaced as early as 1983, the Kansas Department of Health and Environment ("KDHE") identified an area within Wichita Heights as a candidate for the National Priorities List ("NPL"), maintained by EPA pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.  In December 1987, KDHE, pursuant to a contract with EPA, commenced a preliminary assessment and site investigation of a two-square-mile area between Wichita and Park City, Kansas, extending approximately one-half mile on either side of North Broadway from 45th Street to 61st Street (the "Wichita Heights Study Area").

10. KDHE's investigation, the results of which were transmitted to EPA in March 1989, found contamination of groundwater by twenty-seven hazardous constituents.  Eighteen of these—five heavy metals and thirteen volatile organic compounds—were found at levels in excess of Kansas Action Levels (the maximum allowable concentration of the contaminant

allowed in the public water supplies in Kansas).  The groundwater contamination was found underlying properties in an area extending from 57th Street south to 52nd Street and from North Broadway west to Wichita Street.  KDHE's investigation also found several areas where soil was contaminated with heavy metals and volatile organic compounds.

11. Several facilities in the Wichita Heights Study Area were investigated as possible sources of the contamination.  Four were identified as potential sources of the bulk of the contamination:  Midland Refining Company's waste oil refinery at 5755 North Broadway, Clear Water Truck Company, Inc.'s facility at 5650 North Broadway, Crossroads Fina's service station at 5725 North Broadway, and the facility at 5615 North Broadway formerly operated by Wilko Paint, Inc.

12. In August 1990, after additional investigation, EPA found that the Site posed an imminent and substantial endangerment to public health, welfare, and the environment and, under the removal authority of Section 106 of CERCLA, 42 U.S.C. § 9706, arranged to supply with bottled water the homes and business within the Site utilizing contaminated wells.  This removal action continued until May 1992 when the Park City public water distribution system was extended to serve these homes and  businesses.

13. EPA placed the Site on the National Priorities List on October 14, 1992 based on the contamination of the soils and groundwater there with heavy metals, volatile organic compounds, and petroleum-related products.

14. In June 1994, after discovering that not all of the homes and residences with contaminated wells had availed themselves of the opportunity to hook up to the public water system once it became available to them, EPA ordered Midland Refining Company and Wilko

Paint, Inc. to supply hookups to those residences and businesses.

15.     EPA thereafter conducted a Remedial Investigation/Feasibility Study for the Site. In late 1997, during the remedial investigation, EPA discovered additional groundwater contamination southwest and down gradient of the location where the initial groundwater contamination had been found. This additional contamination underlies the residential community of Riverview. EPA supplied bottled water to the residents whose private wells were contaminated until it was able to connect their properties to the Wichita public water system.

16.     In June 1998, EPA issued its Record of Decision for the Riverview portion of the Site. That decision, in which the State of Kansas concurred, called for: (1) the connection of residences with contaminated drinking water wells to the Wichita public water supply; (2) in-situ treatment of the groundwater to prevent further migration of the contamination; and (3) the monitoring of the southern plume. EPA began implementation of this decision in June 1998.

17.     In September 1999, EPA issued a Record of Decision outlining the remedial actions to be taken at the entire Site. This Record of Decision, in which the State of Kansas concurred, superseded the second and third elements of the June 1998 Record of Decision as described in the foregoing paragraph. It calls for: (1) the design and installation of a system of in-situ vapor extraction wells aimed at preventing the migration of contaminated groundwater from the northern plume and treating the water in that plume to reduce the levels of the contaminants of concern to a point below EPA's maximum contaminant levels for those contaminants; (2) if necessary, the installation of additional in-situ vapor extraction wells in the Riverview plume for the same purposes; (3) the installation of an in-situ vapor extraction system at the former Wilko Paint facility to reduce the contaminants in soil there; (4) the sampling of

soil on the Wilko Paint and Midland Refinery properties to ensure that no source areas of soil contamination remain there and, if such areas are found, treatment of those areas with an in-situ vapor extraction system; (5) the monitoring of groundwater to ascertain the effectiveness of the vapor extraction wells and the migration, if any of plume boundaries; and (6) the implementation of institutional controls to prevent exposure to contaminated groundwater.

18. EPA began implementation of these actions in November 2000.

19. The United States has incurred more than $5.7 million in unreimbursed response costs in connection with the Site, including indirect costs and pre-judgment interest, and expects to incur additional response costs.

**Defendants' Activities at the Site**

20. In October 1981, Koch Industries purchased property at 5855 North Broadway (the "Koch Property") from a corporation that had used it as a truck stop, a service station, and a base for fuel delivery trucks. The Koch Property is located in the northwest corner of the Site, several hundred yards upgradient of the main groundwater contamination plume.

21. Koch Industries owned the Koch Property until at least 1984.

22. In 1981, Koch Fuels, Inc. began selling surplus vehicles at the Koch Property. Koch Fuels, Inc. continued to do so until at least 1984.

23. Koch Fuels merged into Koch Refining Company, L.P. on December 31, 1995; Koch Refining changed its name to Koch Petroleum Group, L.P. on January 1, 1999; and Koch Petroleum Group changed its name to Flint Hill Resources, L.P. on January 1, 2002. Flint Hill Resources, L.P. is thus the corporate successor of Koch Fuels, Inc.

24. Waste oil and solvents were generated during the cleaning and servicing of

vehicles at the Koch Property.

25. Between 1981 and 1984 a mixture of waste oil and solvent was sprayed on weeds on the Koch Property.

26. In 1991 and 1992 Koch Industries conducted an environmental investigation of the Koch Property. The sampling results indicated that volatile organic compounds were present in the groundwater beneath the Koch Property.

27. Koch Pipeline Company, L.P. currently owns the Koch Property at 5855 North Broadway.

## STATUTORY BACKGROUND

28. Section 107(a) of CERCLA provides in pertinent part that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to . . . sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for —
>
>> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan;  [and]

> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
>
> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D) . . . .

42 U.S.C. § 9607(a).

29.     Section 101(22) of CERCLA defines the term "release" to mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ."  42 U.S.C. § 9601 (22).

30.     Section 101 (25) of CERCLA defines the term "response" to mean "remove, removal, remedy and remedial action [including] enforcement activities related thereto."  42 U.S.C. § 9701(25).

31.     Section 101(23) of CERCLA defines the terms "remove" and "removal" to mean:

> the cleanup or removal or released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

 42 U.S.C. § 9601(23).

32.     Section 101(24) of CERCLA defines the terms "remedy" and remedial action" to mean:
> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance in to the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger ro present or future public health or welfare or the environment.

**COMPLAINT**                                              -8-

42 U.S.C. § 9601(24).

## CERCLA LIABILITY

33. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

34. 1,1-dichloroethene, trichloroethene, tetrachloroethene, and vinyl chloride are "hazardous substances" within the meaning of Sections 101(14) and 107 of CERCLA, 42 U.S.C. § 9601(14) and 9607.

35. The 57th Street and North Broadway Superfund Site is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. § 9601(9) and 9607(a).

36. The Koch Property at 5855 North Broadway is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. § 9601(9) and 9607(a).

37. Between 1981 and at least 1984, there were "releases" of hazardous substances from the Koch Property at 5855 North Broadway within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. § 9601(22) and 9607(a).

38. Koch Industries, Inc. was an owner of the Koch Property at a time when there was "disposal" of "hazardous substances" there within the meaning of Section 101(29) and (14) of CERCLA, 42 U.S.C. § 9601(29) and (14).

39. Koch Fuels, Inc. was an operator at the Koch Property at a time when there was "disposal" of "hazardous substances" there within the meaning of Section 101(29) and (14) of CERCLA, 42 U.S.C. § 9601(29) and (14).

40. Flint Hill Resources, L.P. is the successor to the liability of Koch Fuels, Inc.

41. Koch Pipeline Company, L.P. is the current owner of the Koch Property within

the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

42. The releases and threatened releases of hazardous substances at the Site caused and will cause the United States to incur "response" costs within the meaning of Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. § 9601(25) and 9607(a).

## CLAIM FOR RELIEF

43. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), each Defendant is jointly and severally liable to the United States for all costs incurred and to be incurred by the United States in connection with the Site not inconsistent with the national contingency plan.

44. CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), provides in pertinent part that in any cost recovery action brought under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1. Enter judgment in favor of the United States and against Defendants Koch Industries, Inc., Koch Pipeline Company, L.P., and Flint Hill Resources, L.P., jointly and severally, for all unreimbursed response costs not inconsistent with the National Contingency Plan that have been incurred by the United States in connection with the Site, including interest;

2. Enter a declaratory judgment that Defendants Koch Industries, Inc., Koch Pipeline Company, L.P., and Flint Hill Resources, L.P. liable are jointly and severally liable for all further costs the United States may incur in connection with the Site;

3.  Grant such other relief as may be just and proper and as the public interest and equities of the case may require.

                         Respectfully submitted,

                         THOMAS L. SANSONETTI
                         Assistant Attorney General
                         Environment and Natural Resources Division
                         U.S. Department of Justice
                         10th Street and Constitution Avenue, N.W.
                         Washington, D.C.  20530

<u>Dated:   April 28, 2004</u>

                       <u>s/ Paul R. Stokstad</u>
                       PAUL R. STOKSTAD
                       Trial Attorney
                       Environmental Enforcement Section
                       Environment and Natural Resources Division
                       United States Department of Justice
                       P.O. Box 7611, Ben Franklin Station
                       Washington, D.C.  20044-7611
                       Telephone:  (202) 353-0058

*Of Counsel:*                                     *Wichita, Ks designated as place of trial.*

STEVEN L. SANDERS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, Kansas  66101

**COMPLAINT**                                    -11-